IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| TIFFANY A.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 22 C 50221 |
| v. ) | |
| ) | Magistrate Judge Laura K. McNally |
| MARTIN O'MALLEY, ) | |
| Commissioner of Social Security,[2] ) | |
| ) | |
| Defendant. ) | |

**ORDER**[3]

Before the Court is Plaintiff Tiffany A.'s memorandum in support of summary judgment, asking the Court to remand the Administrative Law Judge's ("ALJ") decision denying her applications for disability benefits (D.E. 14: Pl. Mem. in Support of Summ, J., "Pl. Mem.") and Defendant's response in support of summary judgment (D.E. 20: Def. Mot. for Summ. J., "Resp.").

---

[1] The Court in this order is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court.

[2] The Court substitutes Martin O'Malley for his predecessor, Kilolo Kijakazi, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On August 16, 2022, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to the magistrate judge for all proceedings, including entry of final judgment. (D.E. 8.)

I.    **Procedural History**

Plaintiff applied for disability insurance benefits and supplemental security income on April 9, 2019, alleging disability beginning April 2, 2019. (R. 15.) The ALJ held a hearing on April 27, 2021, and on May 14, 2021, the ALJ issued a written decision denying Plaintiff's application, finding her not disabled under the Social Security Act (the "Act").[4] This appeal followed. For the reasons discussed herein, Plaintiff's motion is denied and the Commissioner's motion is granted.

II.   **The ALJ Decision**

The ALJ applied the Social Security Administration's ("SSA") five-step sequential evaluation process to Plaintiff's claims. At Step One, the ALJ found that the Plaintiff had not engaged in Substantial Gainful Activity since her alleged onset date (R. 22.)[5] At Step Two, the ALJ determined that Plaintiff had the severe impairments of complex regional pain syndrome (the "pain syndrome")/degenerative join disease right foot;[6] asthma; seizures; and migraines. (*Id.*) At Step Three, the ALJ found that Plaintiff's impairments

---

[4] The Appeals Council subsequently denied review of the opinion (R. 1), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

[5] Plaintiff's impairment stems from a September 2017 workplace accident at UPS, where a piece of heavy machinery rolled over her foot. (Pl. Mem. at 2.)

[6] Complex regional pain syndrome is a form of chronic pain that usually affects an arm or a leg. It typically develops after an injury, surgery, stroke or heart attack. The pain is out of proportion to the severity of the initial injury. https://www.mayoclinic.org/diseases-conditions/crps-complex-regional-pain-syndrome/symptoms-causes/syc-20371151 *visited on* 11/14/24.

alone or in combination did not meet or medically equal a Listing. (R. 23.) The ALJ assessed Plaintiff as having a residual functional capacity to perform sedentary work except that she can "never climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs with railing, occasional squatting and must avoid concentrated exposure to pulmonary irritants and have no exposure to hazards including dangerous moving machinery and unprotected heights, no driving, and no use of foot controls with the right foot. [Plaintiff] must avoid concentrated exposure to intense bright lights and loud noise environments." (R. 24.)

At Step Four, the ALJ found Plaintiff was unable to perform her past relevant work as a fast-food restaurant manager, and at Step Five she found that there were other jobs in the national economy that matched Plaintiff's residual functional capacity. (R. 29-30.) Accordingly, the ALJ concluded that Plaintiff was not disabled. (R. 30.)

### III. Legal Standard

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment

3

meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4). An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

The Court does not "merely rubber stamp the ALJ's decision on judicial review." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022) An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to

their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054. The Seventh Circuit added that "[a]t times, we have put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion.'" *Id*. (citation omitted). The Seventh Circuit further has clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

IV.     **Analysis**

Plaintiff makes four arguments in favor of remand: 1) the ALJ impermissibly played doctor and cherry picked from the record, and 2) the ALJ failed to account for Plaintiff's activities of daily living and daily pain. Each of these issues attacks the Residual Functional Capacity level by accusing the ALJ of failing to accurately account for the record evidence in one way or another. But as explained below, the Court finds

5

that the ALJ supported her decision with substantial evidence and none of Plaintiff's assignments of error undermine that finding to such an extent that remand is required.

    A.    The ALJ Supported Her Residual Functional Capacity Determination with Substantial Evidence.

In assessing that Plaintiff had a residual functional capacity for work at the sedentary level with additional limitations, the ALJ considered both objective and subjective evidence, and she substantially supported her ultimate conclusion that Plaintiff was not disabled. In making her determination, the ALJ first acknowledged Plaintiff's subjective allegations that pain in her right foot stemming from CRPS left her unable to stand or walk for longer than an hour without experiencing extreme pain, swelling, and tingling. (R. 25.) The ALJ also acknowledged Plaintiff's testimony that she needed her husband to help her get in and out of the bathtub to take a shower, that she no longer does laundry or chores, and that she elevates her foot most of the time when sitting or reclining, but sometimes needs to put it down. (*Id.*) The ALJ further mentioned Plaintiff's testimony that she gets her three children up in the morning, takes them to school, takes out the dog, helps her children make their beds, goes to doctor's appointments, reads, and watches television. (*Id.*) Further, the ALJ acknowledged that while Plaintiff took the medication Gabapentin for pain, she had previously declined injections because of a fear of needles, but as of the day of the hearing testified that she was willing to try them. (*Id.*)

6

The ALJ's consideration of the medical evidence in support of her residual functional capacity assessment demonstrated that she reviewed and weighed both evidence that supported Plaintiff's allegations as well as evidence that did not.[7] Specifically, the ALJ discussed:

- A November 2018 physical examination that revealed no swelling or sensory deficits in the right foot and ankle and intact deep tendon reflexes, but that showed increased right foot pain with palpitation and pain in Plaintiff's arch, continued weakness of the right ankle, and atrophy present in the arch compared to Plaintiff's left foot (R. 26);

- Plaintiff's reports to her pain management doctor, Maxim Gorelik, M.D., that Gabapentin provided pain control and relief from burning and tingling in her foot, and her subsequent referral for physical therapy and an orthopedic shoe (*Id.*);

- April and June 2019 examinations with Dr. Gorelik that revealed Plaintiff had a mildly antalgic gait (uneven walking pattern secondary to pain) and moderate tenderness in the right foot (*Id.*);

- Two consultative examinations Plaintiff underwent in connection with her claim for benefits in June and December 2019 which revealed variously that Plaintiff walked with a slight limp, walked unassisted, was unable to walk on heels and toes but could partially squat and get on and off the examination table, and was able dress without assistance. Notes from these examinations revealed right foot tenderness, mostly normal range of motion, a reported history of right foot pain ranging from 7/10 to 10/10, and examination findings of right foot tingling to touch and pain on pressure. (R. 28.);

- A January 2020 neurology examination that revealed normal overall muscle tone, 5/5 strength throughout, normal light touch pain sensation, and normal gait, coordination, and reflexes (R. 27.);

---

[7] Plaintiff does not argue that the ALJ erred in the consideration of her seizure disorder or asthma or in how the ALJ accommodated those impairments in the Residual Functional Capacity, and so the Court does not address that evidence.

- An April 2020 physical therapy intake evaluation where Plaintiff reported that the opioid Norco helped her pain and that Gabapentin and a muscle relaxant both helped as well (R. 26.);

- A number of records concerning Plaintiff's May 2020 physical therapy treatment, including notes showing Plaintiff's improved activity tolerance, improved tolerance to standing, overall improved function, and her presentation with "full pain-free AROM [active range of motion] in right ankle" *(Id.)*;

- Several June 2020 examinations after Plaintiff was in a car accident that revealed, variously, no swelling in her legs, normal range of motion but with tenderness generally present, and normal gait (R. 27); and,

- A January 2021 examination by Dr. Gorelik that revealed moderate pain in Plaintiff's right ankle with palpitation and mild swelling. *(Id.)*

The ALJ additionally weighed the four medical opinions in the record as support for her Residual Functional Capacity assessment. Notably, although both non-examining state agency doctors supported their opinions with reviews of the medical evidence and opined that Plaintiff could work at the light exertional level, the ALJ found the opinions unpersuasive because their findings were inconsistent with Plaintiff's "continued right foot/ankle pain, [and] reported limitations with walking and standing." (R. 28-29.)

Next, the ALJ found partially persuasive the November 2018 opinion of workers' compensation doctor Alan League, M.D., which opined Plaintiff could not be on her feet more than one hour per day and restricted her to no heavy lifting, squatting, or high impact activities. (R. 29.) Although the opinion was supported by the doctor's examination and review of the record, it was not completely consistent with the

8

consultative examinations that showed Plaintiff able to walk unassisted despite alleging 10/10 pain when not taking medications. (*Id.*) Further, the ALJ found Dr. League's opinion only partially persuasive because it was offered prior to Plaintiff's alleged onset date. (*Id.*) [8]

For similar reasons, the ALJ found unpersuasive the opinion of Ryan Holmbeck, DPM. The ALJ noted that Dr. Holmbeck offered his opinion before Plaintiff's alleged onset date, and he did not offer any detailed explanation for his conclusion that Plaintiff had a sedentary residual functional capacity. (*Id.*)

As additional support for her residual functional capacity determination, the ALJ pointed to Plaintiff's daily activities as she reported them in several different settings: (1) a function report she completed with her application for benefits, (2) during her consultative examinations, and (3) at medical and physical therapy examinations and appointments. (R. 28.) Specifically, the ALJ noted that Plaintiff self-reported that she could perform personal care and grooming independently, cook meals, care for her children, drive them to sports activities, perform household chores such as laundry and

---

[8] In her reply brief, Plaintiff argues for the first time that the ALJ erred in her evaluation of the medical opinion and that Dr. League's opinion is somehow entitled to different consideration because it was rendered as part of her workers' compensation case. (D.E. 23: Reply in Support of Pl. Mot. for Summ. J., "Reply" at 1.) Arguments raised for the first time in a reply brief are waived, and the Court will not consider them. *Martin v. Kijakazi*, 21-1920, 2022 WL 1681656, at *3 (7th Cir. May 26, 2022).

vacuuming, shop in stores while leaning on the cart for support, cared for eight children part time,[9] and could work with her husband on a new business "flipping houses." (*Id.*)

Taken as whole, the ALJ supported with substantial evidence her determination of Plaintiff's residual functional capacity and as explained below, none of Plaintiff's assignments of error undermine the ALJ's opinion.

B. The ALJ Did Not Cherry Pick the Record or Impermissibly Play Doctor.

Faced with the ALJ's thorough consideration of the medical evidence, Plaintiff contends the ALJ nonetheless erred both by cherry picking the record to focus only on evidence of improvement and by "playing doctor" when analyzing Plaintiff's limitations caused by her pain syndrome. After reviewing the record, the Court finds these arguments unpersuasive.

Plaintiff contends that because her asserted pain syndrome is "a not well understood phenomenon that uses a number of varied treatments," the ALJ must have played doctor in concluding that Plaintiff's particular treatments up to the day of the hearing (pain medication, orthopedic shoe, and physical therapy) were "routine and

---

[9] Plaintiff argues that the ALJ's reference to "eight children" means the ALJ erroneously thought that Plaintiff actually had eight children of her own, and that her reliance on that incorrect fact is a basis for remand. But it is clear in the ALJ's opinion that she knew Plaintiff had only three children of her own, stating "at the hearing, the claimant testified she lives with her husband and her three children," before listing the daily activities Plaintiff performed with those children (getting them up in the mornings, driving them to school, helping them make their beds, going to their sporting events). (R. 25.) In context, it seems clear that the reference to eight children was a reference to the children' Plaintiff cares for as a self-employed day care worker. (*See* Pl. Mem. at 2.)

10

conservative." (Pl. Mem. at 6.) The ALJ described Plaintiff's treatment as routine and conservative because she observed that "there ha[d] been no surgery and no injections." (R. 26). Her characterization was thus merely descriptive; the ALJ "was just considering Plaintiff's condition and treatment – as required – and providing additional facts in support of her credibility analysis." *Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021).[10]

ALJs may "appropriately consider[ ] and weigh[ ] the conservative treatment" a claimant receives, even if the Plaintiff's doctor did not use the term "conservative" in the treatment records or opinion. *Prill v. Kijakazi*, 23 F.4th 738, 749-50 (7th Cir. 2022) (affirming ALJ's decision denying benefits, which relied on the determination that the claimant's "treatment—injections, orthotics, and physical therapy—was conservative"). *See also Hohman v. Kijakazi*, 72 F.4th 248, 252 (7th Cir. 2023) (upholding ALJ's determination that the claimant's "course of treatment has been conservative," as "medications effectively alleviated her pain symptoms, and the record lacked evidence that she had sought more aggressive treatment").

Plaintiff acknowledges that in addition to treatments such as physical therapy, psychotherapy, and medication, there are "also more extreme treatments including the

---

[10] It is accurate that as of the date of the hearing, Plaintiff had not undergone any pain injections to treat her CRPS. Indeed, she testified at the hearing and the ALJ acknowledged in her opinion that Plaintiff had previously been afraid of needles but had recently decided to try an injection, and Plaintiff testified she was going to receive her first one the day following the hearing. There is no evidence that Plaintiff actually did begin receiving pain injections, however.

11

use of spinal cord stimulator or spinal-fluid drug pumps" that may be also used to treat her pain syndrome. (Pl. Mem. at 6.) Plaintiff admits that "[w]e do not know if more extreme treatment such as a spinal cord stimulator would be effective. . ." (Pl. Mem. at 6-7.) By these statements, Plaintiff acknowledges that the treatment received to date is not the most aggressive possible treatment, and the ALJ's use of the term "conservative" was not in error.

Next, Plaintiff asserts that the ALJ cherry picked from the record to focus only on evidence of Plaintiff's improvement. (Pl. Mem. at 7.) That assertion is belied by the ALJ's thorough discussion of the record. As described above, the ALJ considered and weighed a broad range of medical, subjective, opinion, and daily activity evidence before determining that Plaintiff was not disabled. "This explicit weighing is precisely within the purview of the ALJ—and it is not our place to reweigh evidence, even where reasonable minds might disagree about the outcome." *Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023).

Indeed, in arguing that the ALJ erred in her review of the evidence, Plaintiff does exactly what she accuses the ALJ of doing and cherry picks minor bits of evidence from just a few medical records to attempt to show that the ALJ missed critical information or otherwise focused only on information of medical improvement.[11] But an ALJ need not

---

[11] As just one example, Plaintiff contends that the ALJ erred by stating that she testified she can perform personal care and grooming independently, when she actually testified to the "exact

12

discuss every detail in the record as it relates to every factor. *Grotts v. Kijakazi*, 27 F.4th 1273, 1278–79 (7th Cir. 2022). Summaries of medical evidence, while definitionally "partial and selective," are appropriate. *Id.*

      C.      The ALJ Did Not Err in Her Consideration of Plaintiff's Activities of Daily Living and Pain.

The ALJ properly considered both her subjective allegations of pain and her testimony about her daily activities before determining that Plaintiff's pain was not as severe as she alleged. When assessing a claimant's symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, … and justify the finding with specific reasons." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); *Charles B. v. Saul*, No. 19-cv-1980, 2020 WL 6134986, at *6 (N.D. Ill. Oct. 19, 2020). Importantly, as long as an ALJ gives specific reasons supported by the record, "we will not overturn a credibility determination unless it is patently wrong." *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021). The ALJ's credibility analysis met this standard.

In discounting Plaintiff's testimony, the ALJ adhered to the regulation mandating consideration of whether Plaintiff's symptoms align reasonably with objective medical

---

opposite." (Pl. Mem. at 9). A careful review of the ALJ's decision reveals that her consideration of Plaintiff's activities of daily living relied not on Plaintiff's testimony but on Plaintiff's own function report and on the information she gave to the consultative medical examiner and at medical appointments — records ignored in Plaintiff's moving papers. (*Id.* at 9-10.) There is no error in the ALJ's weighing of Plaintiff's various subjective statements about her abilities.

evidence and other relevant factors. *See* 20 C.F.R. § 404.1529(a). Essentially, Plaintiff argues that the ALJ erred by discounting her testimony about the intensity of her pain and that she needed to elevate her foot throughout the day. But as described above, the ALJ acknowledged both objective and subjective evidence of Plaintiff's pain complaints, medical records and examinations, her conservative treatment, the medical opinions, and Plaintiff's daily activities before determining that her subjective symptoms were not as severe as alleged. The ALJ's assessment was not patently wrong. *See Deborah M.*, 944 F.3d at 789,

With respect to Plaintiff's specific allegation about her need to elevate her foot, the ALJ acknowledged Plaintiff's testimony. (R. 25.) At the hearing, Plaintiff's attorney told the ALJ that the latest medical record recommending that Plaintiff elevate her foot was from July 2018 and that the attorney would get the cite for the ALJ. (R. 68-69.) However, the Court has found no evidence that Plaintiff ever provided such a citation to the ALJ, and Plaintiff points to no evidence in her briefs to support a medical requirement that she elevate her foot. When balanced against the substantial evidence the ALJ offered in support of her Residual Functional Capacity determination, there is no error. *See, e.g., Marcelina R. v. O'Malley*, No. 23-CV-181, 2024 WL 3581742, at *6 (N.D. Ill. July 30, 2024) (No error where ALJ provided multiple reasons and adhered to regulations when discounting Plaintiff's subjective complaint of needing to lie down during the day due to CRPS).

14

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's motion for summary judgment seeking to reverse and remand the ALJ's decision (D.E. 14) and grants Defendant's motion for summary judgment. (D.E. 20).

**SO ORDERED.**

                                          **ENTER:**

                                          _____

                                          **LAURA K. MCNALLY**

                                          **United States Magistrate Judge**

**DATED: November 26, 2024**